Minute Order Form (06/97)

JS-10

# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Robert W. Gettleman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 99 C 8314 | DATE | March 30, 2001 |
| CASE TITLE | **Anthony Adams** v | **Kenneth S. Apfel, commissioner** | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Memorandum opinion and order entered. Accordingly, plaintiff's motion for summary judgment (doc. #6) is denied and defendant's motion for summary judgment (doc. #12) is granted.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | |
|---|---|---|---|---|
| | No notices required, advised in open court. | | | Document Number |
| | No notices required. | | number of notices | |
| X | Notices mailed by judge's staff. | | 3/30/01 date docketed | 18 |
| | Notified counsel by telephone. | | | |
| | Docketing to mail notices. | | C.S. docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| GDS | courtroom deputy's initials | Date/time received in central Clerk's Office | date mailed notice / mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

ANTHONY ADAMS,            )
                          )
        Plaintiff,        )
                          )    No.   99 C 8314
    v.                    )
                          )    Judge Robert W. Gettleman
KENNETH S. APFEL, Commissioner of  )
the Social Security Administration, )
                          )
        Defendant.        )

## MEMORANDUM OPINION AND ORDER

Claimant Anthony Adams, seeks judicial review of a final decision of the Commissioner of Social Security ("the Commissioner") denying his application for Social Security Income ("SSI") benefits, pursuant to 42 U.S.C. §§405(g) and 1383(c)(1)(B)(3).[1] In cross-motions for summary judgment, claimant asks the court to vacate and remand the ALJ's denial of benefits, and the Commissioner asks the court to affirm that decision. For the reasons set forth below, the court denies claimant's motion and grants the Commissioner's motion.

## BACKGROUND

### A. Claimant's Condition

Claimant is 25 years-old and has a ninth grade education with no past work experience. Claimant has been diagnosed as having mature congenital cataracts with amblyopia (dimness of vision without any detectable organic lesion) in his left eye, and dense cataracts in his right eye.

---

[1] On January 22, 1998, Administrative Law Judge Edward J. Gustafson ("the ALJ") denied claimant's request for SSI benefits. The Social Security Administration Appeals Council denied claimant's request for a review of that decision on October 21, 1999, making it the final decision of the Commissioner of Social Security. See 20 CFR §416.1481; Herron v. Shalala, 19 F.3d 329, 332 (7th Cir. 1994).

Claimant also has anisometropia (a difference in the refractive power of the two eyes). As a result, claimant's vision is 20/200 (20/80 corrected) in his left eye and 20/30 (20/20 corrected) in his right eye. In 1994, claimant suffered a gun-shot wound that grazed the right side of his head, resulting in soft tissue swelling in the right anterior parietal region of his scalp.

Claimant says that since he was shot, he suffers from headaches which occur once or twice a week and last for an hour or two. Claimant also says that he occasionally "blanks out," losing vision for a short period of time. Claimant describes his vision in his left eye as "real blurry," making it difficult for him to watch television or read for more than ten minutes straight. When doing these activities, claimant says he has to take a fifteen-minute break before he can continue. Also, staring at objects for long periods of time causes claimant pain and bright lights, and "pointy objects" likewise bother him.

According to claimant, he spends his days mostly walking and visiting with others. When asked whether he helps with housework, claimant says he can sweep and mop the floors.

**B. The ALJ's decision**

Social Security regulations required the ALJ to conduct a five-step test to determine whether claimant is disabled. 20 C.F.R. §404.1520. This five-step inquiry is as follows: (1) Is claimant currently participating in substantial gainful activity? (If so, the claim is disallowed); (2) Is claimant's impairment severe? (If not, the claim is disallowed); (3) Does claimant's impairment meet or exceed one of a list of specific impairments? (If so, the claimant is automatically disabled); (4) Is claimant able to perform his past relevant work? (If so, the claim is denied); and, (5) Is claimant able to perform any other work in the national economy? (If not, claimant is disabled). See id.; Pope v. Shalala, 998 F.2d 473, 477 (7th Cir. 1993). At the fifth step, the ALJ has the burden of

proof, and claimant's physical impairments, age, education, and work experience are taken into consideration. See Paige v. Bowen, 695 F. Supp. 975, 977-78 (N.D.Ill.1988).

The first and fourth steps in the above analysis were undisputed—claimant was not, and never has, participated in substantial gainful activity. With regard to the second step (Is claimant's impairment severe?), the ALJ found that, based on all the evidence and testimony in the record, claimant's dense cataract in his right eye (which resulted in 20/30 visual acuity—20/20 corrected) is not a severe impairment, but claimant's mature cataract and amblyopia in his left eye (which resulted in 20/200 visual acuity—20/80 corrected) is severe. See 20 CFR §416.920(c) (stating that a "severe" impairment is one that "significantly limits your physical or mental ability to do basic work activities"). With regard to the third step (Does the impairment meet or exceed one of a list of specific impairments?), the ALJ found that, based on the expert testimony of Dr. William Rosenberg ("Dr. Rosenberg"), a Board-certified ophthalmologist, claimant's condition is not listed in, or medically equal to, an impairment in the Listing of Impairments. See 20 CFR §§404.1525 and 404.1526.

Finally, with regard to fifth step (Is the claimant able to perform any other work in the national economy?), the ALJ found that under 20 CFR §416.945, claimant has the residual functional capacity to perform the nonexertional requirements of any work except that which requires excellent bilateral vision, and that claimant has no exertional limitations. In reaching that conclusion, the ALJ found that "based on the medical records from claimant's treating physicians and the testimony of . . . Dr. Rosenberg at the hearing, . . . claimant's subjective complaints regarding the extent to which his visual impairments limit his functioning are overstated." The ALJ also concluded that claimant is a "younger" individual under 20 CFR §416.963, he has a "limited

3

education" under 20 CFR §416.964, and he has no "transferable work skills" under 20 CFR §416.968. Based on these findings, the ALJ concluded as follows:

> Considering the range of work at all levels which the claimant is still functionally capable of performing, in combination with his age, education, and work experience, and using [§204.00 Appendix 2, Subpart P, Regulations No. 4] as a framework for decisionmaking, the claimant is not disabled. The claimant was not under a 'disability,' as defined in the Social Security Act, at any time through the date of this decision (20 CFR 416.920(f)).

## STANDARD OF REVIEW

The question before the court is not whether claimant is actually disabled, but rather whether substantial evidence supports the ALJ's conclusion that claimant is not disabled. See Walker v. Bowen, 834 F.2d 635, 640 (7th Cir. 1987); Pope v. Shalala, 998 F.2d 473, 480 (7th Cir. 1993); Wolfe v. Shalala, 997 F.2d 321, 322 (7th Cir.1993). "Substantial evidence," means evidence that "a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971). In making this determination, the court reviews the entire record but refrains from deciding the facts anew, weighing the evidence again, or substituting its own judgment for that of the Commissioner. See Delgado v. Bowen, 782 F.2d 79, 82 (7th Cir. 1985).

## DISCUSSION

Claimant argues that the ALJ erred in three ways in reaching his January 22, 1998, decision denying claimant's request for SSI benefits. Claimant asserts that the ALJ erred in finding claimant not disabled because claimant did not undergo corrective surgery for his cataracts. Claimant also contends that the ALJ's determination that claimant's testimony was not credible was patently wrong. And, finally, claimant argues that the ALJ failed to meet his burden of proof in the final step of his evaluation.

4

## I. The ALJ's alleged error in finding claimant disabled because he failed to undergo corrective surgery

Claimant argues that the ALJ "relied primarily, if not exclusively" on evidence in the record and testimony at the hearing concerning claimant's "noncompliance with recommended medical treatment" in denying claimant SSI benefits. The court need not delve into the legal intricacies of claimant's argument on this point, however, because it lacks basis in fact. While it is true that cataract surgery was *discussed* in the ALJ's decision, the court finds no evidence that the ALJ *relied on* claimant's failure to have the surgery in denying him benefits.

To begin, the discussion of cataract surgery in the ALJ's decision is found in the "summary and evaluation of the evidence" section, rather than the "findings" section. Moreover, the "findings" section demonstrates that the ALJ performed his analysis based on claimant's current condition (i.e., his eyesight with cataracts). The ALJ found the mature cataracts and amblyopia in claimant's left eye to constitute a severe impairment.[2] The ALJ also consulted with Dr. Rosenberg and checked the "Listing of Impairments" to see if claimant's impairment was listed, or to see if claimant's impairment is medically equivalent to a listed impairment. Finally, the ALJ based his determination of claimant's residual functional capacity on claimant's current eyesight; the ALJ found that claimant's ability to perform nonexertional work is limited to those jobs that do not require excellent bilateral vision. Thus, in every step of his analysis, the ALJ evaluated claimant with his cataracts

---

[2] The court notes further that if the ALJ's determination that claimant is not disabled were based on the ALJ's assumption that claimant could obtain corrective surgery on his left eye, as claimant contends, the ALJ would not have found the impairment of that eye to be severe.

5

intact. At no point was claimant penalized by the ALJ for failing to have cataract removal surgery.[3]

## II. The ALJ's alleged patently wrong credibility determination

Claimant next takes issue with the ALJ's conclusion that claimant's testimony regarding his ability to function was not supported by the record and was therefore incredible. According to claimant, the ALJ's conclusion is "clearly against the substantial medical evidence presented in the record." To support this assertion, claimant says that the diagnosis of his treating physician, Dr. Donna Johnson ("Dr. Johnson"), and Dr. Rosenberg's testimony "support [claimant's] account of his symptoms." That may be true, but the court will disturb the ALJ's credibility determination only if it is "patently wrong." Diaz v. Chater, 55 F.3d 300, 308 (7th Cir. 1995).

As explained above, claimant testified that his impairments impede his ability to function in the following ways: (1) he gets one or two headaches a week that last an hour or two in duration; (2) he occasionally "blanks out," losing vision for a short period of time; (3) his vision in his left eye is "real blurry," making it difficult for him to watch television or read for long intervals and requiring him to take a fifteen-minute break every ten minutes; (4) staring at objects for long periods of time causes claimant pain; and (5) bright lights and "pointy objects" likewise bother claimant.

With regard to this testimony, Dr. Johnson's submissions on the record state only that, "I cannot comment on the headaches [claimant] is having. Perhaps the physician who treated him for

---

[3] To be clear, the court is not overlooking the myriad references to cataract surgery in the ALJ's decision. To the contrary, the court notes that the ALJ discussed Dr. Rosenberg's testimony regarding the availability and likely benefit of cataract surgery for claimant at length. Simply reiterating that expert testimony does not constitute error by the ALJ, however. The key in this instance is that the ALJ's determination with regard to disability was based on claimant's current condition. Thus, the court finds that the ALJ did not penalize claimant for failing to undergo surgery to remove his cataracts.

6

his head wound can comment about these headaches." Additionally, during the hearing Dr. Rosenberg explained why claimant experiences some of these problems:

> When an individual with cataracts begins to read and the pupils are given size, as one continues to read with the focusing effort, the pupils get increasingly smaller. And as they get small, it does become difficult to read because they now have to look through the most central part of their lens. And so things do blur out for them. If they stop and look away for 30 seconds, the pupil enlarges again and then they can go on for another ten minutes. Now exactly the same thing happens in bright light. If he's exposed to bright sunlight, his pupils stamp[] down. . . . And he becomes blurred. It's very difficult to be able to interpret what he is saying in terms of disability. He may become blurred but on the other hand we hear that he can walk down the street without a terrible amount of difficulty. I'm sure he's inconvenienced at times. The same thing happens if he sits down in a semi-dark room and looks at the television set which is bright. . . . So those are all subjective phenomenon that are related to the presence of the cataract. . . . [With regard to claimant's testimony that "pointy" objects bother him,] I think that's reflective light. . . . He's talking about light hitting a shiny surface reflecting back into his eye, and again causing the pupil to constrict down.

Comparing claimant's testimony to the diagnosis of Dr. Johnson and the testimony of Dr. Rosenberg, the court finds a few notable differences. First, claimant's headaches were not substantiated nor explained by either doctor. Likewise, claimant's instances of "blanking out" for short periods of time (to the extent that is different from having blurry eyesight) were not substantiated nor explained by either doctor. Also, while claimant testified that he had to look away from reading material or the television set for 15 minutes before continuing, Dr. Rosenberg estimated the required amount of time to be 30 seconds.

Based on these differences between the testimony of claimant and Dr. Rosenberg, the ALJ

7

concluded that claimant's assertions about his limited ability to function are overstated.[4] Claimant says that explanation is not good enough. According to claimant, the ALJ was required to take into consideration all of the factors listed in 20 CFR §416.929 and Social Security Ruling ("SSR") 96-7p when making his credibility determination.[5] The court disagrees.

The sources claimant cites set forth a "two-step process for evaluating symptoms, such as pain, fatigue, shortness of breath, weakness, or nervousness." See 20 CFR §416.929; SSR 96-7p. The first step of that process requires the ALJ to "consider whether there is an underlying medically determinable physical . . . impairment . . . that could reasonably be expected to produce the individual's pain or other symptoms." See id. In the instant case, no evidence was presented to support claimant's assertion that his cataracts could reasonably be expected to produce his headaches, his "blank outs," or his need to refrain from reading or watching television for 15 minutes before continuing. The only symptoms that were shown to be reasonably produced by cataracts were

---

[4] The ALJ's finding states:

Claimant's allegations regarding the extent to which his left and right eye vision problems limit his functioning, are, in light of the objective medical evidence and the testimony of the medical expert in ophthalmology at the hearing, overstated and therefore lack credibility.

[5] The factors in 20 CFR §416.929 and SSR 96-7p include:

(1) The [claimant's] daily activities; (2) The location, duration, frequency, and intensity of the [claimant's] pain or other symptoms; (3) Factors that precipitate and aggravate the symptoms; (4) The type, dosage, effectiveness, and side effects of any medication the [claimant] takes to alleviate pain or other symptoms; (5) Treatment, other than medication, the [claimant] receives or has received for relief of pain or other symptoms; (6) Any measures used to relief pain or other symptoms; and (7) Other factors concerning functional limitations and restrictions due to pain or other symptoms.

8

brief discomfort or inconvenience as a result of blurry vision. As Dr. Rosenberg explained: "He may become blurred but on the other hand we hear that he can walk down the street without a terrible amount of difficulty. I'm sure he's inconvenienced at times." Thus, the second step in the process set forth in SSR 96-7p—the step that requires the ALJ to consider the seven factors delineated above—did not apply in the instant case. According to SSR 96-7p, "if there is a medically determinable physical . . . impairment(s) but the impairment(s) could not reasonably be expected to produce the individual's pain or other symptoms, the symptoms cannot be found to affect the individual's ability to do basic work."

Thus, the court finds that the ALJ's decision to disregard claimant's testimony about his headaches, his "blank outs," and his need to refrain from reading or watching television for 15 minutes before continuing, was not patently wrong. To the extent that claimant's testimony was contradicted by that of Dr. Rosenberg, the court finds nothing wrong with the ALJ's credibility determination. Likewise, to the extent that claimant's testimony was contradicted by his own testimony that he spends his days walking around visiting with others and that he is capable of doing housework, the ALJ's credibility determination was reasonable. And, finally, to the extent that Dr. Johnson's statement that she is unable to comment on claimant's headaches raises significant doubt as to whether those headaches could be said to be a symptom of cataracts, the ALJ properly disregarded that testimony. After all this, the only complaint made by claimant that remains is his testimony that he occasionally "blanks out." Given that no evidence was presented by claimant to support this assertion, the court cannot conclude that the ALJ's decision to disregard it as incredible

is patently wrong.[6]

### III. The ALJ's alleged failure to meet his burden of proof in determining that claimant was capable of performing any work in the national economy

The final contention of claimant is that the ALJ erred in "relying on [the Medical-Vocational Guidelines contained in 20 C.F.R. Part 404 Subpart P, Appendix 2, also known as "the grid"] to find [claimant] not disabled." According to claimant, the ALJ erred in relying on the grid and was required to consult a vocational expert. The court disagrees.

The ALJ's finding states that he used the grid as a "framework for decisionmaking" once he concluded that "claimant has the residual functional capacity to perform the nonexertional requirements of any work except that which requires excellent bilateral vision." According to the cases claimant cites, application of the grid is precluded only where, "a claimant's nonexertional limitation restricts the full range of employment opportunities at the level of work that he is physically capable of performing." Warmoth v. Bowen, 789 F.2d 1109, 1110 (7th Cir. 1986); see also Walker v. Bowen, 834 F.2d 635, 640-41 (7th Cir.1987); Nelson v. Secretary of Health & Human Services, 770 F.2d 682, 685 (7th Cir. 1985) ("The fact that a claimant suffers from a nonexertional impairment does not . . . preclude utilization of the grid[;] . . . the nonexertional limitations must be severe enough to restrict a full range of gainful employment at the designated

---

[6] Claimant also argues that the ALJ "erred in making a credibility determination based on [claimant's] inability to find medical care." According to claimant, the ALJ's offending comment is his statement at the end of the hearing that, "In the meantime, I, I would think it would be advisable to you to check with both the University of Illinois Hospital and the county and if they work on you, you'll be a lot better." The court does not agree with claimant that this statement is a "credibility determination." The statement amounts to nothing more than the ALJ encouraging claimant to pursue cataract surgery, and, as explained above, claimant's failure to obtain that operation was not held against him.

10

level.") (internal quotation and citation omitted). Thus, because claimant's nonexertional limitation does not restrict the full range of employment opportunities at the level of work that claimant is physically capable of performing, the ALJ's use of the grid as a framework for decisionmaking is appropriate.

## CONCLUSION

The court finds that the ALJ's decision is supported by substantial evidence and that the ALJ did not err as claimant asserts. The ALJ did not base his determination of whether claimant is disabled on claimant's failure to undergo corrective cataract surgery. In addition, the ALJ's credibility determination is not patently wrong. Finally, the ALJ's use of the grid is appropriate. Therefore, claimant's motion for summary judgment is denied and the Commissioner's motion is granted.

**ENTER:** March 30, 2001

Robert W. Gettleman
United States District Judge